UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TATA INTERNATIONAL METALS, (AMERICAS) LIMITED ) ) ) Plaintiff, ) ) v. ) ) KURT ORBAN PARTNERS, LLC, ) ) Defendant. ) | No. 19 C 4487 Judge Sara L. Ellis |

## **OPINION & ORDER**

Plaintiff Tata International Metals (Americas) Limited ("Tata") and Defendant Kurt Orban Partners, LLC ("KOP") entered into five sequential transactions for the sale of steel goods pursuant to a Structured Trade Project. Although the parties completed four transactions without issue, Tata filed this action alleging that KOP breached the parties' contract by failing to pay the amount owed under the fifth transaction ("Transaction Five"). KOP moves for the Court to dismiss the complaint for lack of personal jurisdiction. Because the Court has personal jurisdiction over KOP, the Court denies KOP's motion [15].

## **BACKGROUND**[1]

Tata is involved in the business of buying and selling steel products. Tata is organized under Delaware law, and its principal place of business is Schaumburg, Illinois. KOP is organized under the laws of California, and its principal place of business is California. On June 2, 2016, KOP's President, John Foster, approached Tata's President Murat Askin about a

---

[1] In addressing KOP's motion to dismiss, the Court is not limited to the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court uses the facts from the complaint and the additional affidavits submitted by the parties to create this factual section of its Opinion. The Court resolves all factual conflicts and draws all reasonable inferences in Tata's favor. *Id.* at 782–83.

Structured Trade Project and suggested that the parties engage in structured trade transactions. The proposed Structured Trade Project involved KOP arranging for Tata to purchase identified steel bars from third-party Bar Source International, LLC ("BSI") on an "as is / where is" basis, and KOP buying those bars from Tata at a 2% price markup on an "as is / where is" basis. The Project did not include moving the steel. On June 10, 2016, Foster sent Askin a follow-up email proposing a Structured Trade Project transaction between KOP and Tata, and the two proceeded to negotiate the terms of the first transaction. In connection with these negotiations, Foster and other KOP personnel spoke with Dave Kautz, a credit manager at Tata, located in Illinois. The parties successfully carried out the first transaction: KOP identified goods for Tata to purchase from BSI, and Tata bought the identified goods and immediately resold them to KOP on 120 day payment terms. Between June 2016 and October 2017, the parties engaged in four transactions. KOP followed up after the completion of each transaction and requested another transaction.

On February 2, 2018, Foster emailed Askin to request that the parties engage in Transaction Five. The parties proceeded to negotiate Transaction Five, at issue here. On February 15, 2018, KOP emailed Askin documents relating to Transaction Five, including an invoice from BSI to Tata for the purchase of 5,915,823 pounds of steel and an inventory spreadsheet including details of the steel to be purchased. The inventory listed 925,490 pounds of steel at the BSI stockroom; this designation indicated the steel inventory was located in Aurora, Illinois. On February 26, 2018, KOP sent a purchase order, requesting that Tata purchase 5,915,823 pounds of steel on an as is / where is basis, as well as an inventory of the steel to be purchased by KOP that again listed an inventory of 925,490 pounds of steel in the BSI warehouse. The purchase order indicated that the laws of California would govern the order. Neither party signed the purchase order. In response, Tata sent an order acknowledgement,

accepting the purchase order. The order acknowledgement provided that "[a]cceptance of such order is expressly conditioned upon your assent to our Terms and Conditions of Sale . . . Your acceptance of goods specified herein shall operate as your assent to our general terms and conditions of sale." Doc. 15-4 at 1. The order acknowledgement included a description of goods and listed a quantity of 925,490 pounds of steel in Aurora, Illinois. The terms and conditions of sale stated that "[a]ll actions or proceedings arising directly or indirectly or otherwise in connection with, out of, related to or from this contract shall be brought only in the Circuit Court of Cook County in the State of Illinois or in the U.S. District Court for the Northern District of Illinois, Eastern division and Buyer hereby consents and submits to the jurisdiction of such courts for the purpose of such actions or proceedings." Doc. 20-14; Doc. 20-18. KOP alleges that it never received this order acknowledgement. Tata sent its standard terms and conditions to KOP on numerous previous occasions, including in connection with transactions one through three. In connection with Transaction Five, Tata sent KOP an invoice that requested payment of $3,497,466.11 within 120 days of the invoice date (March 1, 2018). The invoice listed four locations under the total quantity and the quantity in each location; 925,490 pounds were in Aurora, Illinois. The invoice also listed material delivered "[a]s is, where is." Doc. 15-5 at 1. The invoice included the standard terms and conditions. In performing its delivery obligations under the Transaction Five purchase order, Tata provided KOP warehouse release and delivery orders, which authorized the four warehouses holding the steel to release it to KOP. The first release indicates the transfer of title for 925,490 pounds of steel at the Aurora Warehousing terminal in Aurora, Illinois.

During the course of the Structured Trade Project, Foster and Askin met several times in Illinois and discussed the Project. During a meeting on June 8, 2018, Foster informed Askin that

KOP might have trouble making its upcoming payment related to Transaction Five. KOP failed to pay the invoice by the due date, and Tata demanded payment from KOP. On July 11, 2018, Foster emailed Tata, stating that KOP would work through this with Tata, had no intention of walking away, and needed material test reports ("MTRs") and releases. Previously, Foster represented that MTRs were unnecessary, and KOP did not request MTRs for any transaction. To date, KOP has not made any payments in connection with Transaction Five. KOP alleges it was unable to locate a significant amount of the steel and none was in Aurora, Illinois.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a defendant. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue*, 338 F.3d at 782. If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). To the extent that the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable and thus a single inquiry suffices. *Id.*; *C.H. Johnson Consulting, Inc. v. Roosevelt Roads Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-CV-08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013) ("In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* [*v. Elwood*, 565 N.E.2d 1302, 1315 (Ill. 1990)] guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice."). In order to satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction comes in two forms: general and specific. General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that

5

it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Tamburo*, 601 F.3d at 701 ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence."). Alternatively, the Court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010).

## ANALYSIS

KOP argues that the Court does not have personal jurisdiction over it. Tata only contends that the Court has specific jurisdiction over KOP, so the Court limits its analysis accordingly.[2] KOP states there is no specific jurisdiction for two reasons. First, the parties formed and performed the contract in Texas and California, and KOP does not maintain sufficient minimum contacts with Illinois. Second, the parties' contract does not incorporate the forum selection clause that Tata cites to subject KOP to personal jurisdiction.

### I. KOP's Minimum Contacts

Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, ––– U.S. ––––, 137 S.Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919). That is, "the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* (quoting *Daimler v. AG Bauman*, 571 U.S. 117, 126 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an

---

[2] Even had Tata argued that the Court has general jurisdiction over KOP, the Court would have rejected this argument because KOP does not have such "continuous and systematic" contacts with Illinois so as to "approximate physical presence." *See Felland v. Clifton*, 682 F.3d 665, 636 (7th Cir. 2012). KOP is incorporated in California, and its principal place of business is California, thus, only California can exercise general jurisdiction over KOP. *See* Doc. 1 ¶ 3.

occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction requires a nexus between the forum-related conduct and the underlying cause of action. *Felland*, 682 at 676. The Court can exercise specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago*, 623 F.3d at 444. However, a defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014).

      A.     **Conduct Purposefully Directed at Illinois**

Tata alleges that KOP breached a contract between the parties. "[I]n a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)). Courts in this district often look to several factors "including (1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." *AS Engine Leasing, LLC v. Vision Airlines, Inc.*, No. 14 C 1436, 2014 WL 6461760, at *3 (N.D. Ill. Nov. 18, 2014) (citing *Citadel Grp. Ltd. v. Merle West Med. Ctr., Inc.*, No. 06-C-6162, 2007 WL 5160444, at *3 (N.D. Ill. June. 13, 2007)). "[P]ersonal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privileges of conducting business in

the forum state." *Felland*, 682 F.3d at 674. "[I]n a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." *RAR*, 107 F.3d at 1278 (quoting *Vetrotex*, 75 F.3d at 153); *see also Sullivan v. Bickler*, 360 F. Supp. 3d 778, 784 (N.D. Ill. 2019) ("With respect to contracts, courts consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" (quoting *Citadel*, 536 F.3d at 761–62)).

Here, the contractual relationship between the parties involved KOP sending Tata a purchase order, Tata purchasing steel from BSI, and Tata reselling the steel to KOP. The parties engaged in four of these transactions without issue, but Tata alleges that KOP never paid with respect to Transaction Five. For Transaction Five, Foster initiated contact with Askin requesting another transaction and followed up a few days later. KOP sent Tata an invoice and inventory spreadsheet relating to Transaction Five. This indicates that KOP initiated the transaction and continued to reach into Illinois with respect to the transaction. *See Sullivan*, 360 F. Supp. 3d at 785–86 (noting that negotiation of the contract and subsequent dealings in Illinois indicated that the defendant would have expected to be haled into court in Illinois if there was a contract dispute); *Lukas Mktg. v. Prince George's Cmty. Coll.*, No. 1:13-CV-04062, 2013 WL 5818592, at *6 (N.D. Ill. Oct. 29, 2013) (exercising personal jurisdiction where the defendant "initiated significant phone, e-mail, and mail contacts with [the plaintiff] in Illinois throughout the formation of the contract"); *Vasilj v. Duzich*, No. 07 C 5462, 2008 WL 2062371, at *4 (N.D. Ill. May 13, 2008) (finding that regular communications from the defendant into Illinois were a significant factor in establishing minimum contacts). Further, during a meeting in Illinois on June 8, 2018, "Foster told [Askin] that KOP might have difficulty making its upcoming payment on time in connection with Transaction 5." Doc. 20-1 ¶ 36. This meeting directly related to

8

KOP's ability to uphold its obligations under Transaction Five. *Purdue*, 338 F.3d at 785 (noting that the defendants made several visits to the state to discuss progress under the contract in its minimum contacts analysis). Moreover, the subject of the contract was located in Illinois. On February 15, 2018, KOP emailed Tata an inventory specifying the steel to be purchased, including the location. Nearly one-fifth of the steel was designated BSI, which indicated that its location was the BSI warehouse facility in Aurora, Illinois. *See* Doc. 20-1 ¶¶ 31, 33; Doc. 20-9. The physical presence of the steel in Illinois is another contact in favor of personal jurisdiction. *See Citadel*, 536 F.3d at 764 (finding personal jurisdiction where the purpose of the contract was project development, most of which occurred in Illinois); *Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13 C 1819, 2013 WL 3755052, at *4 (N.D. Ill. July 16, 2013) (finding personal jurisdiction where the defendant was to develop a national network of salespersons, but the network was "intimately linked" to the plaintiff's operations in Illinois). Although KOP argues that it was unable to locate steel in Aurora, Illinois, at this stage, the Court views the facts in the light most favorable to Tata. *See Tamburo*, 601 F.3d at 700 ("At this stage, therefore, we take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff."). The facts indicate that the steel to be purchased was in Illinois.

Additionally, the parties' previous dealings are relevant to the Court's analysis. *See Sullivan*, 360 F. Supp. 3d at 784; *see also Hyatt*, 302 F.3d at 717 (finding the entire course of dealings between the parties relevant in its personal jurisdiction analysis); *RAR*, 107 F.3d at 1278 ("Not only might a later transaction incorporate understandings formed during prior transactions, but a suit regarding the later transaction might actually hinge on those prior understandings."). KOP approached Tata about a Structured Trade Project, which encompassed multiple transactions. Each transaction involved Tata purchasing steel at KOP's direction and KOP

9

ultimately purchasing that steel from Tata. Therefore, the previous dealings between the parties are relevant because there was an arrangement between KOP and Tata for transactions of similar magnitude involving the same good. *See WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720, 727 (N.D. Ill. 2014) (explaining that communications regarding other projects "not directly related" before the defendant approached the plaintiff about entering the agreement at issue "were sufficiently related to constitute a continuing relationship"); *Merix Pharm. Corp. v. EMS Acquisition Corp.*, No. 09C5871, 2010 WL 481247, at *4 (N.D. Ill. Feb. 4, 2010) (finding prior transactions relevant where "they formed an ongoing arrangement specifically for the manufacture and sale of the very product-sometimes, for the very purposes-from which the disputes in this case arise"). Foster raised the Structured Project with Askin in Illinois and followed up about the Project by initiating communication with Askin—located in Illinois—and negotiating the terms of the first transaction. Foster also communicated via email and over the phone with two Tata employees, also located in Illinois, regarding finances. These actions show that Foster continuously reached into Illinois in an effort to transact business with Tata. *See AS Engine Leasing*, 2014 WL 6461760, at *3 ("Isolated communications may not provide a basis for asserting personal jurisdiction, but telephone and email communications are relevant when considering the totality of a defendant's contacts with the forum state."). Moreover, these communications continued for the next eight months, and "KOP repeatedly requested that Tata enter into new Structured Trade Project transactions after the completion of each preceding transaction." Doc. 20-10 ¶ 25; *see also Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) ("Sustained contact over the course of several months . . . is not random, fortuitous, or attenuated." (citation omitted) (internal quotation marks omitted)). In

10

addition to consistent communications directed at Illinois, Foster and Askin met in-person multiple times in Illinois to discuss the Structured Trade Project.

Further, the active purchaser doctrine confirms that jurisdiction over KOP is proper. Illinois law distinguishes between active purchasers, who have submitted to jurisdiction in the seller's forum, and passive purchasers who have not. "A 'passive purchaser' is one who places orders at the seller's price, and an 'active purchaser' is one who takes a more aggressive intrusive role in purchasing by going to inspect the seller's production facilities or vigorously negotiating contract terms." *WAV*, 47 F. Supp. 2d at 727 (quoting *Belle-Aire Fragrances, Inc. v. Odorite Int'l, Inc.*, 898 F. Supp. 621, 624 (N.D. Ill. 1995)); *see also Abbott*, 543 F. Supp. 2d at 924 (explaining a passive purchaser "merely places an order for goods" and accepts the seller's terms, whereas an active purchaser "dictates or vigorously negotiates contract terms"). This distinction protects "both the due process rights of the ordinary mail order purchaser and the legitimate interests of sellers who manufacture custom-built products according to a nonresident buyer's specifications." *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 343 (1992) (citation omitted) (internal quotation marks omitted); *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 32 ("If the buyer departs from a passive role by dictating or vigorously negotiating contract terms or by inspecting production facilities, the unfairness which would be associated with the exercise of long arm jurisdiction over that buyer dissipates, and he or she will be subject to personal jurisdiction in the courts of the seller's State." (quoting *Chalek v. Klein*, 193 Ill. App. 3d 767, 773 (1990))). Here, KOP approached Tata regarding the Structured Trade Project and selected BSI as the supplier from which Tata purchased steel and resold it to KOP. Tata did not ordinarily sell this steel. Further, KOP selected the exact inventory of goods for Tata to buy and sell. These facts demonstrate that KOP defined the terms on which it would conduct business

11

with Tata, making it an active purchaser. KOP's role as an active purchaser further confirms that it would not be unfair to subject KOP to jurisdiction in Illinois. *See Abbott*, 543 F. Supp. 2d at 925 ("[A]n out-of-state purchaser that might otherwise claim insulation from the assertion of personal jurisdiction in Illinois . . . cannot advance that position successfully where that purchaser has itself tailored and dictated the specifications for its purchases from the Illinois seller." (quoting *Drivecon Corp. v. Hoist & Crane Serv. Grp.*, 196 F. Supp. 2d 688, 690 (N.D. Ill. 2001))).

### B. Injury "Arises Out Of" Defendant's Contacts With The Forum State

"Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts." *Felland*, 682 F.3d at 676. Here, there is no doubt that Tata's breach of contract claim arises out of KOP's contacts with Illinois. KOP initiated its relationship with Tata in Illinois, continued to negotiate with Tata in Illinois, and communicated substantially with Tata in Illinois. KOP's alleged refusal to uphold its obligations under the contract it negotiated and entered into with Tata, an Illinois company, gives rise to the claim. Further, KOP informed Tata that it might not be able to uphold its obligations under the contract in-person in Illinois.

### C. Traditional Notions of Fair Play and Substantial Justice

The final inquiry in the Court's specific jurisdiction analysis is whether the exercise of personal jurisdiction over KOP would offend traditional notions of fair play and substantial justice. *See id.* at 677. In this analysis, courts evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies." *Id.* (citation omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citation omitted).

Here, the factors weigh in favor of exercising jurisdiction over KOP. First, out-of-state defendants always face a burden, and the burden on KOP is minimal. Second, KOP established an existing relationship with Illinois through its communications and in-person presence relating to the contract over the course of several years. *See Wedi Corp. v. Seattle Glass Block Window, Inc.*, No. 17-CV-06368, 2018 WL 1794771, at *4 (N.D. Ill. Apr. 16, 2018) (explaining that the defendant "established a continuing relationship with [the plaintiff] and communicated with its headquarters in Illinois as part of that relationship" which "took place over several years, so defendant was on notice that it might be subject to suit in Illinois"). Illinois has a significant interest in adjudicating a dispute where a defendant reaches into Illinois to conduct business and allegedly breaches a contract with one of its citizens. *C.H. Johnson Consulting*, 2013 WL 5926062, at *7 ("Illinois plainly has an interest in enforcing commercial transactions to which its citizens are a party."); *see also uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010) (noting "Illinois's significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois"). Third, Tata has an interest in obtaining convenient and effective relief, as its headquarters, employees, and records are all located in Illinois. Fourth, the Court agrees with Tata that the most efficient resolution is to maintain this action in Illinois, rather than to transfer it to Texas as KOP suggests. Finally, the several states have a shared interest in enforcing contracts and holding citizens of other states accountable for breaching contracts with their residents.

13

Overall, the Court can exercise specific jurisdiction over KOP based on its contacts with Illinois.

## II. The Forum Selection Clause

Tata also argues that jurisdiction is proper because the parties' agreement included a forum selection clause. KOP responds that it never received the terms and conditions that contain the clause and it was not part of the parties' contract. "[P]ersonal jurisdiction is waivable and . . . parties can, through forum selection clauses and the like, easily contract around any rule we promulgate." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (quoting *RAR*, 107 F.3d at 1280); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction."). "A forum selection clause 'is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable under the circumstances.'" *Macey & Aleman v. Simmons*, No. 10-CV-06646, 2011 WL 1456762, at *3 (N.D. Ill. Apr. 14, 2011) (quoting *Williams v. Ill. State Scholarship Comm'n*, 139 Ill. 2d 24, 71 (1990)). Here, Tata's terms and conditions provide that KOP consents to jurisdiction in the Northern District of Illinois; however, KOP argues the parties' contract did not incorporate this clause. Thus, the Court will assess whether Transaction Five included a valid forum selection clause.

KOP first argues that the parties formed a contract when KOP sent the purchase order to Tata, and Tata's terms and conditions are therefore not part of the contract. "[C]ontract formation is governed by state law." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Under Illinois law, "[a] valid contract requires an offer, acceptance, and consideration," as well as mutual assent. *Lexington Ins. Co. v. DSC Logistics, Inc.*, No. 09-CV-7003, 2010 WL 1910310, at *3 (N.D. Ill. May 6, 2010) (citation omitted). With respect to

14

Transaction Five, KOP sent a purchase order indicating the steel to be purchased, and Tata subsequently sent an order acknowledgement and invoice to KOP, both including Tata's standard terms and conditions. The purchase order only constituted an offer because by sending the purchase order, KOP sought to enter into another transaction with Tata. *See Echo, Inc. v. Whitson Co.*, No. 93 C 4349, 1994 WL 395004, at *1 (N.D. Ill. July 26, 1994) ("Purchase orders are offers to buy and are construed as inviting acceptance either by a prompt promise to ship or by prompt or current shipment."); *see also Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1337 (7th Cir. 1991) (finding that purchase orders were offers and invoices were acceptance); *Q.C. Onics Ventures, LP v. Johnson Controls, Inc.*, No. 1-04-CV-138-TS, 2006 WL 1722365, at *7 (N.D. Ind. June 21, 2006) (concluding that the defendant's purchase orders were offers). Moreover, KOP's own actions indicate that it did not believe a contract was formed when it sent the purchase order. On February 27, 2018, after it sent the purchase order, KOP emailed Tata the following: "Would you please advise the status? We urgently need this deal to be funded today as discussed." Doc. 20-13. Overall, KOP sending a purchase order was insufficient to form a contract.

Next, KOP argues that the parties' contract does not include the forum selection clause because it is inconsistent with the purchase order, which contains a choice of law clause. However, the purchase order does not mention a forum where disputes must be heard and is therefore not inconsistent with the forum selection clause. Forum selection clauses and choice of law clauses address separate concerns. *Miyano Mach. USA, Inc. v. Zonar*, No. 92 C 2385, 1994 WL 233649, at *7 (N.D. Ill. May 23, 1994) ("[I]t is entirely possible that a choice of law provision would be different from a forum selection clause (e.g., an express choice of one state's law and a provision for arbitration in a different state)."); *cf. Stawski Distrib. Co. v. Browary*

*Zywiec S.A.*, 349 F.3d 1023, 1025 (7th Cir. 2003) (finding a forum selection clause enforceable and explaining "[c]hoice of law is another matter altogether"). Therefore, the forum selection clause does not contradict the purchase order's choice of law clause.

Finally,[3] KOP argues that the forum selection clause materially alters the contract and therefore is not part of the parties' agreement. Because Transaction Five involved goods, the Uniform Commercial Code applies. *See* 810 Ill. Comp. Stat. 5/2-102 *et seq.* Section 2-207 of the UCC provides:

> [A]dditional terms [included in a written acceptance or confirmation] are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they materially alter it; or
> (c) notification of objection to them . . . is given within a reasonable time after notice of them is received.

810 Ill. Comp. Stat. 5/2-207. The parties dispute whether the forum selection clause materially alters their contract. To determine whether an additional term is a material alteration, the Court evaluates "whether the addition constitutes an unreasonable surprise to one of the bargaining parties." *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 713 (7th Cir. 1987) (citation omitted); *see also Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1009 (7th Cir. 1996) ("An alteration is material if the party against whom it is sought to be enforced would be ambushed by its addition to the contract."); *Union Carbide*, 947 F.2d at 1336 ("What is expectable, hence unsurprising, is okay; what is unexpected, hence surprising, is not."). Terms

---

[3] KOP also argues in its reply brief that: (1) the forum selection clause is invalid because Tata's standard terms and conditions made acceptance conditional on assent to the additional terms; and (2) there was no meeting of the minds regarding the forum selection clause. However, "arguments raised for the first time in a reply brief are waived." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018) (quoting *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014)). Because KOP failed to raise these arguments in its motion to dismiss, the Court will not consider them here.

that materially alter an agreement cannot bind a party without its consent. *See Union Carbide*, 947 F.2d at 1335–36. If a new term constitutes a material alteration, the party that included the term must present additional evidence to show that it is reasonable for the Court to infer consent, "ordinarily this will be evidence of prior dealings." *Id.* at 1336.

Therefore, the Court must assess whether the forum selection clause was a material alteration by looking to the parties' course of dealing. KOP and Tata had engaged in four nearly identical transactions over the previous few years. After KOP sent a purchase order, Tata replied with an order acknowledgement and invoice, both of which contained its terms and conditions. KOP was on notice of the forum selection clause based on the parties' dealings, as it received the terms on at least six prior occasions.[4] *See, e.g.*, *Schulze*, 831 F.2d at 715 (explaining that nine prior confirmations included an arbitration provision, so the party was on notice and the arbitration provision was not a material alteration in the tenth confirmation); *Waukesha Foundry*, 91 F.3d at 1009 (noting that the party consented to the terms and conditions included in previous packing slips and invoices over the past four years). Accordingly, the forum selection clause was not a material alteration to the parties' agreement, and the parties' contract incorporated this provision. *See Midland Paper Co. v. Digital Pro, Inc.*, No. 17 C 8124, 2018 WL 3190819, at *4 (N.D. Ill. May 7, 2018) (concluding that a forum selection clause was not a material alteration when it was specifically incorporated into the parties' prior transactions); *Highland Supply Corp. v. Kurt Weiss Greenhouses, Inc.*, No. CIV. 08-859-GPM, 2009 WL 2365244, at *2 (S.D. Ill. Apr.

---

[4] It is not apparent whether Tata sent the terms and conditions in connection with the parties' fourth transaction, *see* Doc. 20-1 ¶ 41, which weighs against recognizing the standard terms and conditions as part of the parties' dealings. However, Tata sent the terms and conditions in connection with the three other previous transactions, and Transaction Five occurred less than a year after the third transaction. This temporal proximity suggests that KOP was still on notice of the terms and conditions.

28, 2009) (finding a forum selection clause was a term of the parties' agreement because the party was aware of it based on the course of the parties' business relationship).

Therefore, personal jurisdiction over KOP is also proper based on the forum selection clause.

## CONCLUSION

For the foregoing reasons, the Court denies KOP's motion to dismiss for lack of personal jurisdiction [15].

Dated: August 27, 2020

                                                                           SARA L. ELLIS
                                                                           United States District Judge